IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NAENB MERSHAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:16-cv-0961-SMY |
| | ) |
| PULASKI COUNTY | ) |
| DETENTION CENTER, | ) |
| DR. CHARLES PAULIUS, | ) |
| D. ACUFF, | ) |
| TARAH RIDDLE, | ) |
| JANNA CORNELIUS, and | ) |
| NURSE TINA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Naenb Mershah is currently detained at the Pulaski County Detention Center in Ullin, Illinois, seemingly on the orders of Immigration and Customs Enforcement officials. (Doc. 1 at 2; Doc. 3 at 1-2.) Proceeding *pro se*, Mershah has filed two Complaints—one initial and one amended—against the Warden of the Pulaski County Detention Center, some of its staff and the center itself, alleging that officials with the center failed to provide proper treatment for his chronic spleen-related issues in mid-2016. (Doc. 3 at 4-6.)[1] Mershah seeks monetary damages for the "pain and suffering" he endured before he received proper treatment. (*Id.* at 8.)

This matter is now before the Court for a review of Mershah's Amended Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or

---

[1] Because an Amended Complaint supersedes an initial Complaint, the Court will treat Mershah's Amended Complaint as the operative pleading in this case.

dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

## Background

According to the Amended Complaint, Mershah seems to have been detained on an Immigration and Customs Enforcement hold at the Pulaski County Detention Center since at least 2016. (Doc. 3 at 2-4.) Because his spleen was removed some time ago, Mershah suffers from some immune-related complications and he alleges that he must receive a "vaccine shot" every year to boost his immune response. (Doc. 3 at 4.) On June 16, 2016, he was taken to the infirmary for a sinus infection and was held there for two days. (*Id.*) Mershah claims that he was very ill during that time period—he could not sleep or eat and was sensitive to light and sound. (*Id.*) On June 9, 2016, he submitted a medical request stating that he was told by a prior physician that he needed a "vaccine shot" every year given his spleen history and that he needed one of those shots now. (*Id.*) He also spoke with Jenna Cornelius, the head nurse at the detention center, and told her that his vaccination was overdue and that he needed to see the "head doctor." (*Id.*) Cornelius told Mershah that no vaccination was necessary and gave him antibiotics instead. Mershah was later returned to general population. (*Id.*)

Mershah continued to feel ill after his return to general population and his condition deteriorated further in early August 2016. (*Id.* at 5.) On or around August 9, 2016, he experienced sharp stomach pains, dizziness, and vomiting. (*Id.*) Three inmates alerted Sergeant Tarah Riddle of his problems for "four hours straight," but no imminent action was taken to assist him. (*Id.*) At approximately 1 AM on August 10, 2016, another officer at the detention center told a nurse of the situation and Mershah was immediately taken to the center's infirmary in a wheelchair. (*Id.*) The nurse took Mershah's vitals and contacted Dr. Paulius, who ordered

the medical staff to place him in a special management housing unit on medical observation. (*Id.*) No special housing bed was available at the time, so Mershah was transferred to the segregation unit for observation, and his vitals were not watched. (*Id.*)

Later on the morning of August 10, 2016, Mershah met with Dr. Paulius, telling him that he needed to go to an emergency room. (*Id.* at 6.) Dr. Paulius declined to transfer him to the ER, said that Mershah only had reflux issues and gave him an "acid pill." (*Id.*)

Mershah was then returned to general population despite the fact that he was "physically incapable" of walking for the next five days, was having trouble eating and was still vomiting. (*Id.*) At some point after his return to general population, Mershah told Nurse Tara of his extreme pain, but she took no action. (*Id.*) On August 15, 2016, Mershah was taken to see Dr. Paulius again and he then ordered Mershah transferred to the Union County Hospital. (*Id.*) Medical testing at the hospital confirmed that Mershah was suffering from a bowel obstruction and he received treatment. (*Id.*)

Mershah claims that he submitted grievances concerning the improper care that he received at the detention center. (*Id.* at 1.) Unsatisfied with the detention center's response, he filed suit against a number of officials at the center on August 26, 2016. (Doc. 1 at 1.) Before the Court could review his original Complaint, Mershah filed his Amended Complaint on September 22, 2016, alleging the same facts and asserting failure to treat at the detention center. (Doc. 3.)

## Discussion

The Court begins its § 1915A review with two preliminary matters. First, throughout his Amended Complaint, Mershah refers to the conduct of some individuals not named in his caption or his defendant list: he states that Officer McNeely and Officer Fairless were the

officials that took him to the infirmary for treatment in June 2016; that Officer Windings summoned medical assistance for him on August 10, 2016; and that Nurse Shannon and Nurse Tara were involved with his care in August 2016. Because these parties are not listed in the caption by name or by Doe designation, they will not be treated as defendants in this case and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

Second, three of the parties that Mershah has named as defendants, Warden Acuff, Nurse Tina and the Pulaski County Detention Center are only listed in the caption or Mershah's list of defendants—there is nothing substantive in the Amended Complaint to suggest that Warden Acuff or Nurse Tina had a role in Mershah's care or that a policy or practice of the Pulaski County Detention Center contributed to the alleged constitutional violations. A plaintiff cannot state a claim merely by including a defendant's name in the caption, *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, these defendants must also be dismissed without prejudice.

Turning to the substantive allegations in Mershah's Amended Complaint, the Court finds it proper to divide the complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

> **COUNT 1:** Cornelius failed to properly address Mershah's need for immune treatment in June 2016, in violation of Mershah's Fourteenth Amendment rights.
>
> **COUNT 2:** Riddle failed to summon medical assistance for Mershah on August 9 or 10, 2016, in violation of Mershah's Fourteenth Amendment rights.
>
> **COUNT 3:** Dr. Paulius failed to properly treat Mershah's bowel complications on August 10, 2016, in violation of Mershah's Fourteenth Amendment rights.

The Court will conduct a threshold evaluation of each of these counts in turn.

**Count 1**

Mershah's Amended Complaint begins with allegations linked to Nurse Cornelius' care at the detention center. He alleges that Cornelius failed to give him an immune-related vaccination so as to prevent the complications that might arise from his long-term, spleen-related issues. Despite the fact that Mershah has used a form designed for *pro se* prisoners to bring suits against state officials under 42 U.S.C. § 1983, he appears to be detained on a federal immigration hold at a federal immigration facility. Thus, his claims are best characterized as *Bivens* actions against Cornelius and the other officials who treated him at the center. *E.g.*, *Flores v. United States*, 689 F.3d 894, 902-03 (8th Cir. 2012); *Bob v. Kuo*, 387 F. App'x 134, 135-36 (3d Cir. 2010).[2]

Additionally, Mershah's medical claims are premised on the Fourteenth Amendment rather than the Eighth Amendment, as he appears to be a detainee rather than a prisoner. *Estate of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014). That said, the elements of a medical claim are the same under both amendments: to make out a claim, a detainee must allege that he had a serious medical condition and that officials were deliberately indifferent to that condition. *E.g.*, *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

For screening purposes, Mershah has alleged the existence of serious conditions. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient

---

[2] The Court will assume that all of the defendants are employees of the center rather than contractors, but if that assumption turns out to be incorrect, Mershah's federal claims may be subject to dismissal at a later date. *Minneci v. Pollard*, 132 S. Ct. 617 (2012); *Flores*, 689 F.3d at 903.

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Mershah's immune system and bowel related issues qualify as serious, at least at this stage. *See id.* at 1372 n.7.

Mershah's Amended Complaint also sufficiently alleges that Nurse Cornelius acted with deliberate indifference. To be sure, "medical malpractice, negligence, or even gross negligence" by a medical official "does not equate to deliberate indifference," *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Because deliberate indifference is such a demanding state of mind requirement, there is no constitutional violation merely because a physician's treatments ultimately prove ineffective, *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), nor is there a constitutional violation solely because a doctor refuses to give a prisoner the exact treatment he wishes, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That said, deliberate indifference can exist if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Given Mershah's medical history and his spleen-related complications, the decision to deny him the immune-related treatment that he references may have crossed that line and Count 1 may proceed for now.

## Count 2

In Count 2, Mershah claims that Sergeant Riddle violated his Fourteenth Amendment rights by delaying his treatment on August 9 or August 10, 2016. As noted above, Mershah's immune and bowel problems all qualify as objectively serious at this stage. As such, the only

question is whether Mershah has sufficiently alleged that Sergeant Riddle was deliberately indifferent to those conditions.  Construing the Amended Complaint broadly, Mershah states that three other detainees at the center complained to Sergeant Riddle that Mershah needed help, that Riddle did not obtain it and that there was no apparent reason for Riddle's delay.  That is sufficient to make out a claim at this juncture. It is true that every delay in treatment does not suggest deliberate indifference on the part of officials—prisons are, after all, busy and dangerous places with limited resources, so prisoners often have to wait to receive routine treatment.  *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).  However, even short delays in treatment can establish indifference by officials if the delay was unnecessary and the prisoner's condition worsened because of the delay or he experienced prolonged pain because of the delay.  *See*, *e.g.*, *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004).  Given that Mershah has alleged needlessly prolonged pain, Count 2 may proceed through threshold screening review.

### Count 3

Mershah's final claim is directed at Dr. Paulius. He asserts that Dr. Paulius violated his Fourteenth Amendment rights when he failed to properly treat him on August 10, 2016.  Given Mershah's history of spleen-related problems and his condition on the day that Dr. Paulius first saw him, Dr. Paulius' decisions to defer outside care, to prescribe reflux treatment alone and to return Mershah to the general population may have constituted deliberate indifference. Those decisions, like the decision to prescribe an aspirin for an appendicitis, may have gone so far outside the bounds of medical judgment as to not constitute judgment at all.  *See, e.g., Petties*, 836 F.3d at 729-33; *Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000).  At this stage, the Court cannot rule out indifference by Dr. Paulius and Count 3 survives threshold review.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **CORNELIUS**, **COUNT 2** shall **PROCEED** against **RIDDLE,** and **COUNT 3** shall **PROCEED** against **PAULIUS**. However, all claims against **NURSE TINA**, **D. ACUFF**, and the **PULASKI COUNTY DETENTION CENTER** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **CORNELIUS**, **RIDDLE**, and **PAULIUS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the federal rules.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to Magistrate Judge Daly for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 15, 2016**

s/ STACI M. YANDLE
**U.S. District Judge**
